DECISION
This matter comes before the court on defendants, the Board, URI, Palazzo, Mulcahey, and Demello, motion for summary judgment or in the alternative, partial summary judgment, and their motion for entry of final judgment
On April 8, 1998, young Jesse Frizzell, died as the result of a self-inflicted gunshot wound. The record contains several accounts of the events leading up to the time of Jesse's death. However, it appears to be uncontested that on April 8, 1998, the plaintiffs Raymond Frizzell, his wife Christine, "called the Little Compton Police Department concerned that Jesse was suicidal because he was severely depressed and acting irrationally over that fact that his girlfriend had informed him that she was seeing someone else. Jesse's former girlfriend, Tara Aboyan, had called [Mr. Frizzell] and specifically stated that Jesse had told her that he intended to kill himself." Affidavit of Raymond Frizzell. Seealso Exhibits 1 2. The Little Compton Department also "received a telephone call from Mr. and Mrs. Charles Aboyan informing them that Jesse had driven to their home and was extremely emotional, hysterical, continuously crying and shaking. Apparently Jesse had given their son one thousand dollars ($1, 000), stating that he would not be needing it any longer." Affidavit of James J. Fyfe, PH.D. See also Exhibit I.;Deposition of Antone Marion, III.
From this point, the factual accounts differ. In his deposition, Mr. Frizzell states that "Little Compton, and in particular, Antone Marion, Bertrand A. Chretien and Brendan McKinnon, assured [him and his wife] that they would broadcast to all of the local police departments within the stat; the state police and the University of Rhode Island the fact that Jesse was suicidal. Little Compton and Antone Marion also assured [them] that, if found, Jesse would be detained and his keys would be taken from him in order that we could have the opportunity to pick him up and get him treatment." Affidavit of Raymond Frizzell. Mr. Frizzell also states that he "spoke with URI campus security and informed them of the facts that led [him] to believe that Jesse was suicidal and needed treatment. URI promised me that if Jesse was located [Mr. Frizzell] would be contacted and [Jesse] would be detained." Id.
The defendants claim that Mr. Frizzell told the URI dispatcher, Johnson, that "his son had left their house, seemed distraught, could possibly be suicidal, might be heading to his girlfriend's house in Narragansett, but could end up on the URI campus. Frizzell gave Johnson the information regarding the car Jesse was driving and asked them at URI to be on the lookout for the vehicle. Ray Frizzell wanted URI to stop the car and talk to his son. Frizzell also wanted URI to see if his son was okay." Defendants' Memorandum in Support of Motion for Summary Judgment
at 2. In his deposition, Johnson asserts that Mr. Frizzell requested that URI conduct a well being check if Jesse was found on campus. "He asked us to, if we seen [sic] him and caught up with him could we try to keep him there until he got there. But basically it was more, it turned more into like a well-being thing." Deposition of Dispatcher Johnson, 13.
Jesse Frizzell did appear in the vicinity of URI approximately thirty seven hours after his father initially contacted the Little Compton police. His car was stopped on Route 138 by two members of the URI Campus Security, defendants Palazzo and Mulcahey. Officer Palazzo testified that she "advised (Jesse] that the reason [she] asked him for identification was because there was a welfare check for him, and [she] asked him to please get in touch with his parents." Deposition of Linda Palazzo, 35. Officer Palazzo spoke with Jesse for approximately five minutes and said that there was nothing in Jesse's demeanor that concerned her or indicated that he was a danger to himself. She also indicated that she had not been told to detain Jesse. Id. 64, 73.
 Clift v. Narragansett
In 1996, the Rhode Island Supreme Court decided Clift v. Narragansett,
688 A.2d 806, a case in which a decedent's wife brought suit against a television station alleging liability for her husband's suicide. The defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the superior Court Rules of Civil Procedure. Plaintiffs objection and response was supported by the affidavit of a psychoanalyst retained for the purposes of the litigation. Because of the affidavit, the motion to dismiss was treated as a motion for summary judgment. Said motion was granted. The plaintiff appealed to the Rhode Island Supreme Court. In its decision, the Court said:
 "With regard to civil claims alleging, as a basis for liability, the negligence of a defendant as being the proximate cause of a. decedent's suicide, the majority rule that has evolved is that unless a special relationship existed between the defendant and the deceased that created an increased or higher duty of care to protect a potentially suicidal person from foreseeable injury, the Restatement (Second) Torts sec. 455 (1965) rule is the most favored and applied. That rule recognizes liability for negligent conduct (1) that brings about delirium or insanity in another and (2) if while that condition of delirium or insanity continues to exist, it prevents the affected person from realizing the nature of his or her condition or
makes it impossible for him or her to resist the suicidal impulse by depriving that person of the capacity to reasonably control his or her conduct and not carry out the suicidal impulse.
"From the outset it must be emphasized that Plaintiffs are not alleging that the Defendants' actions brought about Jesse's suicidal impulse as alleged in the case of Clift v. Narragansett Television, L.P., 688 A.2d 805
(R.I. 1996)." Plaintiffs' Memorandum, 9. Rather the plaintiffs in this matter claim that defendants are liable based upon their special relationship with the decedent. Plaintiffs argue that, as in traditional negligence principles, "foreseeability of the risk of harm is the touchstone for the imposition of a duty under the special relationship analysis." Memorandum.
Plaintiffs argue that Jesse's suicide was foreseeable. In support of their contentions, they offer affidavits from James J. Fyfe, PH.D. and Paul E. Alexander, MD. Dr. Alexander is a psychiatrist licensed to practice in Rhode Island. In his statement, Dr. Alexander attests that:
 "8. Although Jesse Frizzell may have appeared stable to URI security, a fact which is presently disputed, potentially suicidal individuals do have the capability of masking their intent and their unstable emotions for a short period of time.
 9. Under these facts, Jesse Frizzell's risk of committing suicide if he was not detained and provided treatment was reasonably foreseeable to a reasonable degree of medical certainty.
 10. Under these facts, Jesse Frizzell could have been detained pursuant to R.I. Gen. Laws § 40.1-5-7
because he was in danger of causing serious harm to himself.
 * * *
 12. It is my opinion, based upon a reasonable degree of medical certainty, that if Jesse Frizzell had been detained by URI and taken to a mental health facility for treatment, his suicide on April 9, 1998 would have been prevented." Affidavit.
Dr. Fyfe is a professor of criminal justice at Temple University and has lectured and written extensively on the subject of police standards and conduct. He is a former New York City police officer. In his affidavit, Dr. Fyfe states, in part, that:
 "3. The giving away of personal possessions is a well recognized suicidal gesture which should have alerted Little Compton and URI to the seriousness of Jesse Frizzell's condition.
 * * *
 7. Under these facts, Jesse's risk of committing suicide if he was not detained and provided treatment was reasonably foreseeable, thereby creating a legal duty on the part of Little Compton and URI to use reasonable care to protect him from harming himself.
 8. Under these facts, Jesse Frizzell could have been detained pursuant to R.I. Gen. Laws § 40.1-5-7
because he was in danger of causing serious harm to himself. In this regard, the Rhode Island statute is patterned after standard mental health commitment laws of which I am familiar, and pursuant to which Jesse Frizzell should have been detained based upon the facts known to the Little Compton Police Department and URI." Affidavit.
Whether the defendants knew or should have known about Jesse's state of mind is a much disputed question of fact. However, the defendants argue another test for liability in suicide cases. They assert that the general rule propounded by the Clift case, rather than the special relationship exception, should govern this Courts decision of the instant matter. The defendants argue that the Court should view this matter in terms of the "uncontrollable impulse rule." That rule "recognizes liability for negligent conduct (1) that brings about delirium or insanity in another and (2) if while that condition of delirium or insanity continues to exist, it prevents the affected person from realizing the nature of his or her condition or makes it impossible for him.. to resist the suicidal impulse by depriving that person of the capacity to reasonably control his. conduct and not carry out the suicidal impulse." Clift, 688 A.2d at 810.
This Court will ultimately evaluate this matter under the special relationship test propounded in Clift because that is the only theory which plaintiffs assert. Whether this test is satisfied is one of factual determination more appropriate for a trier of fact. Fuxthermore, since the determination of duty hinges, in this case, on the existence of a special relationship, the Court cannot rule on this matter in a motion for summary judgment.
 Rhode Island General Laws § 40.1-5-7
Section 40.1-5-7 of the Rhode Island General Laws states in pertinent part:
 "A qualified mental health professional or police officer who believes the person to be in need of immediate care and treatment, and one whose continued unsupervised presence in the community would create an imminent likelihood of serious harm by reason of mental disability, may make emergency certification to a facility. (2) Whenever an applicant, not employed by a community mental health center established pursuant to chapter 8.5 of this title, has reason to believe that the institute of mental health is the appropriate facility for the person, the application shall be directed to the community mental health center that serves the area in which the person resides, if the person is a Rhode Island resident, or the area in which the person is physically present, if a nonresident, and the qualified mental health professional(s) at the center shall make the final decision on the application to the institute of mental health or may determine whether some other disposition should be made. *** (d) Custody. Upon the request of an applicant under this section, to be confirmed in writing, it shall be the duty of any peace officer of this state or of any governmental subdivision thereof to whom request has been made, to take into custody and transport the person to the facility designated, the person to be expeditiously presented for admission thereto."
Plaintiffs argue that defendants failed to act reasonably when they neither detained Jesse nor consulted a mental health professional regarding his possible suicide ideation. They argue that this section of the General Laws is designed specifically to address situations such as the one currently at issue. While defendants argue that this statute does not provide for an express cause of action, this Court agrees with plaintiffs' contention that it does delineate a standard of care requiring that persons who are in need of treatment and are in imminent danger due to mental instability be considered for emergency certification by police officers. Additionally, this Court considers campus security officers to constitute peace officers within the meaning of the statute. Accordingly, plaintiffs' claim under this statute survives. The nature of defendants' duty and any breach thereof will be determined at trial.
For the aforementioned reasons, the defendants' motion for summary judgment (full or partial) is denied.